UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

STUART COOK                                    CIVIL ACTION NO. 10-0809

VERSUS                                         JUDGE S. MAURICE HICKS, JR.

CITY OF SHREVEPORT, ET AL.                     MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is a Motion for Partial Summary Judgment (Record Document 48) filed by Defendants Paul Robinson, Francis Mogavero, Pat Hensley, and the City of Shreveport. Defendants have moved for dismissal of Plaintiff Stuart Cook's ("Cook") unlawful entry claims, false arrest claims, and damages for lost income. See Record Document 48-1. They have also moved for summary judgment on all federal claims and the request for punitive damages against the City of Shreveport. See id. Defendants have conceded that "there are factual issues at this juncture which prevent the application of qualified immunity on the issue of excessive force." Id. at 5. While he conceded certain limited issues relating to damages, Cook opposed the Motion for Summary Judgment. See Record Document 58. For the reasons which follow, the Motion for Summary Judgment is **GRANTED**.

**BACKGROUND**

This lawsuit arises from a May 25, 2009 early morning incident that occurred in a Sam's Town Casino hotel room in Shreveport, Louisiana. On May 24, 2009, Cook performed as a member of a band, Creedence Clearwater Revisited, at the Sam's Town Casino in Shreveport, Louisiana.[1] The performance ended no later than 9:30 p.m. See

---

[1] Cook is an original member of the band Creedence Clearwater Revival and now plays bass for the Creedence Clearwater Revisited.

Record Document 58, Exhibit 1007 at 43. Cook then returned to his hotel room at the Sam's Town Casino. See id. Between 10:00 and 10:30 p.m., Cook joined other band members and members of the band's crew at one of the casino lounges for "a drink." Id. at 44. Cook stayed at the bar a short period of time – less than a couple of hours. See id. at 48. He recalled having one beer and leaving with half a beer. See id. Cook recalled saying "good night" to the group and the next thing he remembered was "hotel security pounding on [his] hotel room door." Id.

Cook does not remember what happened between his leaving the casino lounge and him hearing hotel security pounding on his hotel room door – a period of a few hours. See Record Document 58 at 6; Record Document 58-2 at ¶¶ 5-7. Defendants agree, stating "many of the exact details of Cook's conduct after he left the Sam's Town bar until the incident in his hotel room are unknown as Cook has no recollection of a period of several hours after he left the Sam's Town bar." Record Document 48-1 at ¶ 6.

Relying upon deposition testimony of Lorenzo Johnson ("Johnson"), a Sam's Town Emergency Medical Technician at the time of the incident, Defendants contend that Cook left the casino lounge in Sam's Town and went to the Eldorado Casino. See Record Document 48, Exhibit 1014 at 46-47. According to Johnson, Cook returned from the Eldorado Casino hours later and appeared to be intoxicated. See id. and Incident Report attached to Johnson Deposition. Johnson recalled that Cook was too intoxicated to return to Sam's Town on his own and had to be escorted back to Sam's Town in a wheelchair by Eldorado Casino security personnel. See id. Johnson escorted Cook to his room, which was located on the fourteenth floor, and while there observed Cook's "belongings thrown all over the floor and a broken lamp." See id.

Conversely, Cook contends that "while [he] may have no recollection of this period, others clearly have some indication as to what transpired during this period." Record Document 58-2 at ¶ 6. Cook relies heavily upon the deposition testimony of Otis Brewer ("Brewer"), a Sam's Town Security Officer. See Record Document 58, Exhibit 5009. Brewer stated that when he saw Cook prior to the incident in question, he did not think that Cook "was that far gone" or "tore down." Id., Exhibit 5009 at 40. Brewer also stated that he never saw Cook in a wheelchair. See id., Exhibit 5009 at 42. When Brewer left the fourteenth floor, he recalled that Cook was standing in his doorway with Ronnie Walker, the security shift supervisor, and Johnson. See id., Exhibit 5009 at 48.

Cook does not dispute[2] that Johnson alerted the front desk clerk about the situation in the hotel room and the decision was made to go back to Cook's room to access the situation with the lamp and to investigate if there was further damage to the room. See Record Document 48, Exhibit 1014 at 46-47 and Incident Report attached to Johnson Deposition. The Sam's Town employees knocked on Cook's door and requested that he allow them to enter. See id., Exhibit 1007 at 49. Cook denied them access to the room. See id.

An employee of Sam's Town then made a 911 call to the Shreveport Police Department and reported the property damage in Cook's room. See id., Exhibit 1008 at 37. Shreveport Police Officers Pat Hensley ("Officer Hensley"), Paul Robinson ("Officer

---

[2]Defendants filed a Concise Statement of Material Facts as to Which There is No Issue to be Tried. See Record Document 48-1. This statement listed 22 facts. See id.
    In response, Cook filed a Concise Statement of Disputed Material Fact. See Record Document 58-2. Cook disputed nine facts. See id. Therefore, all other facts set forth in Defendants' Concise Statement have been deemed admitted.

Robinson"), and Francis Mogavero ("Officer Mogavero") went to Sam's Town to investigate. See id., Exhibit 1008 at 10-11, 20.

Sam's Town employees informed the officers that Cook had been transported from the Eldorado Casino and to his room and appeared to be in a highly intoxicated state. See id., Exhibit 1008 at 11 and Exhibit 1009 at 59, 66. The officers were also informed that when an employee took Cook to his room, the room appeared to be in disarray and a hotel lamp was broken. See id.

Sam's Town employees and the officers requested Cook allow them into the room. See id., Exhibit 1007 at 49. Cook initially refused them entry. See id. Cook then recalled that he had a second exchange with the officers:

> A: The next exchange was they said open the door or we will break it down. . . . You know, I pondered, what could be the possible outcome of all this if I let them break my door down? I decided, well, it is the police department, so I know I have – I'm in my room, what have I got to lose by opening the door and letting them in? So they are pounding on the door. I attempt to release the security latch and turn the knob, the door knob at the same time and apparently what happened is the door knob released the door before I had the security latch completely off. Now the door is open but the security latch is still on. So they just busted right through it. I'm trying to shut the door so I can get the security latch off. . . . So I'm trying to close the door and get the security latch off, they are pushing on the door. So we are not really getting anywhere until the security latch becomes separated from the wall, the door flies open and everyone rushes into the room led by the Shreveport Police Department.
>
> . . .
>
> A: . . . I reconsidered, decided that the wisest choice would be to try and let them in and see what is going on, although I didn't believe I was required to do so.

Id. at 51-53. Cook stated in his deposition that he believed he told the officers:

> [O]kay, I will comply or words to that effect, that I was going to open the door,

there's no need to bust in.

Id. at 53-54.  Despite this deposition testimony, Cook now argues in his opposition that he did not consent to the entry into his room.  See Record Document 58 at 18-19.

Officer Robinson testified in his deposition that immediately prior to entering Cook's room, he began to hear things being thrown around in the room and also started hearing "a male saying things about Nazis, communism, just crazy things." Record Document 48, Exhibit 1008 at 15.  At this point, Officer Robinson stated that he began to think this was more than an intoxicated person and he asked Officer Mogavero to enter the room.  See id.  Likewise, Officer Hensley recalled:

> [Cook] was screaming and carrying on inside something about some communists coming after him or something like that.  I believe he made some comments about the war, Vietnam or something like that, if I'm recalling it all right.  And there was things breaking inside the room.

Record Document 58, Exhibit 5011 at 11.  Officer Mogavero stated in his deposition that he did not recall if Cook was saying anything in the room.  See Record Document 58, Exhibit 1009 at 41-42.  Johnson stated that he did not remember hearing "anyone screaming or talking loudly about communists or Nazis or anything to that effect." See id., Exhibit 1014 at 33.

There are factual disputes relating to what occurred in Cook's hotel room once the officers entered.  See Record Document 48-1 at ¶ 16.  The officers contend that Cook resisted arrest.  See id.  Cook contends that he did not.  See id.  However, these facts relate to Cook's excessive force claim[3] and Defendants have not moved for summary

---

[3]Cook may argue that these disputed facts also relate to his Monell claim against the City of Shreveport.  However, as will be set forth *infra*, these disputed facts are not material to the resolution of the Monell claim.

judgment on such claim.

After the incident, Cook was arrested for resisting an officer and criminal damage to property. See Record Document 58, Exhibit 3. He was booked into the city jail. See Record Document 58 at 8. The charges were eventually *nolle prossed* and the arrest record was ordered expunged. See Record Document 58, Exhibit 5015.

## LAW AND ANALYSIS

**I.     Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536,

---

[4]The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

540 (5th Cir.2005).

## II. Qualified Immunity.

"Qualified immunity shields government officials from civil damages liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pasco ex rel. Pasco v. Knoblauch, 566 F.3d 572, 578 (5th Cir. 2009). The doctrine affords government officials breathing room to make reasonable but mistaken judgments about open legal questions. See Ashcroft v. al-Kidd, — U.S. —, 131 S.Ct. 2074, 2085 (2011). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." Id. "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002).

Until recently, courts resolved government officials' qualified immunity claims under a strict two-part test, deciding (1) whether facts alleged or shown by plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct. Pasco, 566 F.3d at 579, citing Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001). "However, the Supreme Court has revisited this rule and determined that the rigid two-step structure is no longer mandatory." Id. Rather, district court "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 818 (2009).

**III.     Unlawful Entry Claim.**

The officers argue that they were authorized to enter Cook's hotel room on two independent grounds, consent and exigent circumstances. Alternatively, the officers maintain that even if they were mistaken in their belief that they had a right to enter the hotel room, the mistake was reasonable and application of qualified immunity demands judgment in their favor.

The Fourth Amendment imposes two requirements: (1) all searches and seizures must be reasonable; and (2) a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity. See Kentucky v. King, — U.S. —, 131 S.Ct. 1849, 1856 (2011). "Although the text of the Fourth Amendment does not specify when a search warrant must be obtained, [the Supreme Court] has inferred that a warrant must generally be secured." Id. "[S]earches and seizures inside a home without a warrant are presumptively unreasonable." Id. Yet, the Supreme Court has "also recognized that this presumption may be overcome in some circumstances because the ultimate touchstone of the Fourth Amendment is reasonableness." Id. Well-recognized exceptions to the general rule include consent and exigent circumstances. See id. ("One well-recognized exception applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment."); see also Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S.Ct. 2793, 2797 (1990) ("The prohibition does not apply, however, to situations in which voluntary consent has been obtained."); U.S. v. Grice, No. 09-30231, 2010 WL 2813768, *2 (5th Cir. July 19, 2010) ("[T]he police were not required to obtain a search warrant before searching pursuant to consent.").

Despite his deposition testimony, Cook now argues in his opposition that he did not consent to the officers' entry into his hotel room. See Record Document 58 at 18-19. Specifically, he contends that he is unsure whether he gave "verbal consent" and that the officers' actions were inconsistent with consent. Id. Thus, the Court will decide the unlawful entry claim based on exigent circumstances and qualified immunity.

As stated previously, although searches and seizures without a warrant are presumptively unreasonable, that presumption can be overcome. See Michigan v. Fisher, — U.S. —, 130 S.Ct. 546, 548 (2009). For instance, the Supreme Court has held that "the exigencies of the situation may make the needs of law enforcement so compelling that the warrantless search is objectively reasonable." Id. One such exigency is referred to as the emergency aid exception and allows law enforcement officers to "enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." Id. Law enforcement officers "do not need ironclad proof of a likely serious, life-threatening injury to invoke the emergency aid exception." Johnson v. City of Memphis, 617 F.3d 864, 868 (6th Cir. 2010). They also do not "need to wait for a potentially dangerous situation to escalate into public violence in order to intervene," as their role includes the prevention of violence and restoration of order. Id. The emergency aid exception "does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises." Fisher, 130 S.Ct. at 548. It simply requires "an objectively reasonable basis for believing that a person within the house is in need of immediate aid." Id.

Cook argues that there are factual disputes regarding the existence of exigent circumstances. He relies upon other witnesses who were near or at the door to Cook's

room at the time of the incident who have testified that they heard no comments about Nazis, communism, war, or other "odd topics." Record Document 58 at 19. However, it is undisputed in this case that the officers responded to a 911 call reporting property damage/vandalism. See Record Document 48, Exhibit 1008 at 37. Moreover, Cook does not dispute that Sam's Town employees informed the officers that Cook had been transported from Eldorado Casino and escorted to his hotel room at Sam's Town; that Cook appeared highly intoxicated; and that when a hotel employee delivered Cook to his room the employee observed the room in disarray and a broken hotel lamp. See Record Document 63 at 2. Additionally, Officer Robinson's deposition testimony regarding things being thrown around in the room and hearing "a male saying things about Nazis, communism, just crazy things" is corroborated by Officer Hensley's deposition testimony. See Record Document 48, Exhibit 1008 at 15; Record Document 58, Exhibit 5011 at 11. While other individuals such as Officer Mogavero and Johnson simply do not recall hearing these statements, Cook himself has filed no affidavit denying that he made such statements.

Based on the foregoing, the Court finds that it was objectively reasonable for the officers to believe there were exigent circumstances warranting their entry into Cook's hotel room without a warrant. The officers had been dispatched on a property damage call and were informed that Cook was intoxicated; his room was in disarray; and hotel property had been damaged. After arriving at Cook's room, two of the three officers heard things being thrown around in the room and the room's occupant making comments about "Nazis, communism, just crazy things." See Record Document 48, Exhibit 1008 at 15; Record Document 58, Exhibit 5011 at 11. As stated by Officer Robinson, his collective knowledge,

namely these last two occurrences, elevated the situation to "a welfare concern" and the officers were objectively reasonable in believing that a person within the hotel room was in need of immediate aid and/or protection from imminent injury. Record Document 48, Exhibit 1008 at 15; see also Fisher, 130 S.Ct. at 548. The officers were not required "to wait for a potentially dangerous situation to escalate into . . . violence in order to intervene." Johnson, 617 F.3d at 868. Accordingly, summary judgment in favor of Defendants is granted as to Cook's unlawful entry claim.[5]

### IV. False Arrest Claim.

Cook alleges that he was falsely arrested. See Record Document 18 at ¶ 14. Defendants have moved for summary judgment on Cook's false arrest claim, arguing that "probable cause for his arrest existed so the [officers] are entitled to [summary] judgment." Record Document 48-2 at 9. Alternatively, Defendants contend that even if this Court were to decide that there was no probable cause, it was still reasonable for the officers to believe that they had probable cause to arrest Cook and they are entitled to qualified immunity. See id. at 10. Cook maintains that summary judgment on his false arrest claim is improper because material issues of genuine fact exist regarding the propriety of his arrest. See Record Document 58 at 21.

A law enforcement officer is reasonable under the Fourth Amendment in making a warrantless arrest where there is probable cause to believe that a criminal offense has

---

[5]Cook's state law claim for unlawful entry is likewise dismissed, as the exigent circumstances doctrine applies under Louisiana law. See State v. Fournette, 2008-0254 (La.App. 4 Cir. 7/2/08), 989 So.2d 199, 211-212 ("In the absence of exigent circumstances, an officer cannot lawfully enter a residence without a warrant."); see also Kirk v. Louisiana, 536 U.S. 635, 122 S.Ct. 2458 (2002); Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371 (1980).

been or is being committed. See Devenpeck v. Alford, 543 U.S. 146, 152, 125 S.Ct. 588, 593 (2004). Probable cause exists when the facts and circumstances within the arresting officer's personal knowledge, or of which he has reasonably trustworthy information, are sufficient to occasion a person of reasonable prudence to believe an offense has been committed." Evett v. DETNTFF, 330 F.3d 681, 688 (5th Cir. 2003). Probable cause is decided on the basis of facts available to the officer at the time of the arrest. See id. Probable cause can also be supported by the collective knowledge of law enforcement personnel who communicate with each other prior to the arrest. See id.

A law enforcement officer is entitled to qualified immunity, and is thus shielded from liability, "even if he reasonably but mistakenly concludes that probable cause is present." Id. The Fifth Circuit has explained:

> A plaintiff must clear a significant hurdle to defeat qualified immunity. There must not even "arguably" be probable cause for the search and arrest for immunity to be lost. That is, if a reasonable officer could have concluded that there was probable cause upon the facts then available to him, qualified immunity will apply.

Brown v. Lyford, 243 F.3d 185, 190 (5th Cir. 2001); see also Morris v. Dillard Dept. Stores, Inc., 277 F.3d 743, 753-754 (5th Cir. 2001) ("An officer's entitlement to qualified immunity based on probable cause is difficult for a plaintiff to disturb.").

Here, at a minimum, the officers are entitled to qualified immunity. First, Defendants asserted in their Motion for Summary Judgment that Cook could have been arrested for public drunkenness. Cook made no argument in his opposition against this position. Moreover, the summary judgment record easily supports a finding that the officers were reasonable, even if in hindsight they might have been mistaken, in concluding that probable cause was present to arrest Cook for criminal damage to property under Louisiana Revised

Statute 14:56.[6] Simple criminal damage to property is a general-intent crime and can be proven by showing that the accused damaged another's property without the owner's consent. See Martin v. City of Alexandria, No. 05-30653, 2006 WL 1985506, *4 (July 17, 2006), citing State v. Shaw, 850 So.2d 868, 875 (La.Ct.App.2003). Thus, the officers were reasonable in their belief, as the officers were told that when a hotel employee delivered Cook to his room the employee observed the room in disarray and a broken hotel lamp.

Cook appears to argue that the officers did not have probable cause because Brewer testified in deposition that he did not see Cook in a wheelchair and Cook did not seem highly intoxicated to him. Relying upon Brewer's deposition testimony, Cook also seems to question whether a Sam's Town's employee actually saw the broken lamp in Cook's room before members of the Shreveport Police Department were called to Sam's Town. However, Brewer's deposition testimony does not prevent summary judgment. As stated *supra*, Cook does not dispute the following facts: that Sam's Town employees informed the officers that Cook had been transported from Eldorado Casino and escorted to his hotel room at Sam's Town; that Cook appeared highly intoxicated; and that when a hotel employee delivered Cook to his room the employee observed the room in disarray and a broken hotel lamp. See Record Document 63 at 2. Cook has cited no summary

---

[6]La. R.S. 14:56 provides:

A. (1) Simple criminal damage to property is the intentional damaging of any property of another, without the consent of the owner . . . by any means other than fire or explosion.

(2) The provisions of this Section shall include the intentional damaging of a dwelling, house, apartment, or other structure used in whole or in part as a home, residence, or place of abode by a person who leased or rented the property.

judgment evidence demonstrating why the officers would have had reason to doubt or disbelieve the information which was conveyed to them by the Sam's employees at the scene. See Evett, 330 F.3d at 688 ("Probable cause exists when the facts and circumstances within the arresting officer's personal knowledge, ***or of which he has reasonably trustworthy information***, are sufficient to occasion a person of reasonable prudence to believe an offense has been committed.") (emphasis added). Under these circumstances, the officers are entitled to qualified immunity because reasonable officers in their position could have concluded that there was probable cause to arrest for public drunkenness and/or criminal damage to property under the facts then available to them. See Brown, 243 F.3d at 190 ("That is, if a reasonable officer could have concluded that there was probable cause upon the facts then available to him, qualified immunity will apply."). Summary judgment in favor of Defendants is, therefore, granted and Cook's false arrest claim is dismissed.[7]

### V.     Lost Income.

Defendants argue that the record is devoid of evidence to support a past or future lost income award under federal or state law. See Record Document 48-1 at 12-14. Cook conceded the lost income claim, without prejudice:

---

[7]Cook also presented a claim for false arrest under Louisiana Civil Code Article 2315. Under Louisiana law, the officers can make an arrest when they had "reasonable cause to believe that the person to be arrested has committed the offense." La. C.Cr.P. Art. 213; see State v. Buckley, 426 So.2d 103, 107 (La.1983) (holding that probable cause to arrest exists when the officer has articulable knowledge of facts sufficient to reasonably suspect the detained of criminal activity). Here, based on the qualified immunity analysis, the officers had reasonable cause to believe that Cook had committed the offense of criminal damage to property. See generally Hingle v. Hebert, No. 99-1123, 2000 WL 635428, *2 n. 1 (E.D.La. May 17, 2000).

> Cook has lost no earning opportunities, thus far, attributable to this injury, and therefore concedes that, to date, there is no lost income. However, it is possible that his condition could deteriorate to the point where he is no longer able to perform. To the extent that such might occur prior to trial, Cook does not wish to lose such a claim.

Record Document 58 at 22.

Here, as set forth in a previous Memorandum Ruling, Cook has conceded there is no lost income to date and is simply unable to meet his burden of proving future wage loss/impairment of earning capacity, as he has no expert evidence as to future damages.[8] Thus, summary judgment in favor of Defendant is granted and Cook's lost income claim is dismissed.

## VI. Federal Claims Against the City of Shreveport.[9]

Defendants have also moved for summary judgment on Cook's Section 1983 federal claims against the City of Shreveport. In his First Amended Complaint, Cook alleges:

> The Shreveport Police Department's custom and practice, for dealing with situations such as this, enables its agents and employees to act with deliberate indifference to the constitutional rights of individuals by tolerating misconduct by its officers and failing to adequately supervise or train them to refrain from this type of activity.
>
> The exercise of this established custom violated plaintiffs clearly established rights under the United States Constitution and makes the City of Shreveport and its Police Department liable for the actions of its officers in this case. The room invasion, arrest and beating occurred without ant

---

[8]"While a plaintiff who seeks to recover for damages he is likely to sustain in the future must prove these future damages by a preponderance of the evidence, he can do so only by adducing expert opinion, for what the future holds can only be prophesied." Gideon v. Johns-Manville Sales Corp., 761 F.2d 1129, 1137 (5th Cir. 1985). "Possibility alone cannot serve as the basis for recovery, for mere possibility does not meet the preponderance of the evidence standard." Id.

[9]State law claims against the City of Shreveport relating to the Defendant officers' alleged use of excessive force against Cook remain.

> warrant or other right of entry and in violation of Plaintiff's constitutional rights under the United States Constitution: the fourth amendment prohibiting unreasonable searches and seizures; and the eighth amendment prohibiting cruel and unusual punishment - the use of excessive force under color of state law.

Record Document 18 at ¶¶ 10-11.

Cities and municipalities may be held liable for the acts of their employees or agents only if the injury inflicted results from the "execution of a government's policy or custom, whether made by its lawmakers or by those who edicts or acts may fairly be said to represent official policy." Monell v. New York City Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-2038 (1978). To establish municipal liability under 42 U.S.C. § 1983, a plaintiff such as Cook is required to prove: (1) a policy or custom existed, (2) the governmental policy makers actually or constructively knew of its existence, (3) a violation of constitutional rights, and (4) the custom or policy served as the "moving force" behind the violation. Meadowbriar Home for Children, Inc. v. G.B. Gunn, 81 F.3d 521, 532-533 (5th Cir. 1996). Importantly, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur . . . ." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001) (emphasis added); see also Bennett v. City of Slidell, 728 F.2d 762, 767 (5th Cir. 1984) ("If a city may be liable only where the injury is inflicted in the execution of city policy, the complainant must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy. Plaintiff must, of course, prove that his injury was caused by city policy.").

Defendants have presented the affidavit of Willie Shaw ("Chief Shaw"), who presently serves the Shreveport Police Department in the capacity of Chief of Police. See

Record Document 48, Exhibit 1013. Chief Shaw stated that it was not the custom or practice of the Shreveport Police Department "to violate the constitutional rights of suspects or citizens"; "to gain unlawful entry into premises"; to arrest individuals in the absence of probable cause"; or "to use excessive, unnecessary or unreasonable force when affecting an arrest." Id., Exhibit 1013 at ¶¶ 4-7. Chief Shaw also attested:

> Officers of the Shreveport Police Department are trained in the circumstances which allow lawful entry into premises, probable cause and in the proper use of force and are instructed to use only that force as is reasonably necessary as dictated by the facts and circumstances faced by the officer.
> All officers are instructed not to (1) unlawfully enter any premises, (2) unlawfully arrest any citizen, and (3) use excessive, unnecessary or unreasonable force in the performance of their duties.
> All officers are made aware that citizen complaints are subject to departmental review.

Id., Exhibit 1013 at ¶¶ 8-10.

Cook contends that "the affidavit from Chief Willie Shaw is self-serving boilerplate, and does not address whether patterns of persistent conduct have replaced written policies, practices and customs, leaving open for the jury to decide whether the officers' behavior in this case was representative of municipal policy." Record Document 58 at 23. Cook also appears to rely on a purported question of fact regarding whether the officers were acting in accordance with formal legal policy or official declaration. See id. at 22.[10]

---

[10] Specifically, Cook argued, without citation to summary judgment evidence:

> In this case, however, the officers have testified that they believed that they were acting in accordance with the policies, practices and customs of the Shreveport Police Department. However, if the officers were not following a formal legal policy or official declaration, then they must have been following a "persistent pattern of conduct such that it has taken the place of formal policy.
> It is a question of fact to be presented at trial whether the officers were

At this stage, Cook is required to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc., 379 F.3d at 141. He has failed to do so, as he has pointed to no competent summary judgment evidence to rebut Chief Shaw's affidavit and/or to support a finding that a custom or policy was the "moving force" behind any alleged violation of his constitutional rights. See Meadowbriar Home for Children, Inc., 81 F.3d at 532-533 (5th Cir. 1996); Piotrowski, 237 F.3d at 578 ("the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur."). Moreover, even if the Court assumed a constitutional violation, the fact "that a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation." Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 406-407, 117 S.Ct. 1382, 1389 (1997). Summary judgment in favor of Defendants is, therefore, granted and all Section 1983 claims, i.e., federal claims, against the City of Shreveport are dismissed.

### VII. Punitive Damages.

Cook has conceded "that under controlling law, the City of Shreveport may not be held liable for punitive damages under the circumstances of this case." Record Document 58 at 23. Accordingly, summary judgment in favor of Defendants is granted and any

---

> engaged in a policy, practice or custom that is either formal municipal policy, or else a policy, practice or custom that has arisen through a persistent pattern of conduct such that the officers recognize it to be official policy. The existence of such a persistent pattern of conduct may be established through the testimony of the officers.

Record Document 58 at 22.

request for punitive damages against the City of Shreveport is dismissed.

## CONCLUSION

Based on the foregoing analysis, the Motion for Partial Summary Judgment (Record Document 48) filed by Defendants is **GRANTED**. The Court finds that the actions of Officer Robinson, Officer Mogavero, and Officer Hensley in the early morning hours of May 25, 2009 were objectively reasonable. Accordingly, Cook's unlawful entry and false arrest claims, asserted under both federal and state law, are **DISMISSED**. The Court further finds that Cook has failed to establish that a City of Shreveport custom or policy was the "moving force" behind any alleged violation of his constitutional rights. Therefore, Cook's federal claims against the City of Shreveport are **DISMISSED**. In light of Cook's concessions, summary judgment in favor of Defendants is also appropriate as to Cook's request for lost income damages and punitive damages against the City of Shreveport.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 18th day of August, 2011.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE