**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| STUART COOK | CIVIL ACTION NO. 10-0809 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CITY OF SHREVEPORT, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 51) filed by Defendant, Red River Entertainment of Shreveport Partnership in Commendam, d/b/a Sam's Town Casino ("Sam's Town"). Sam's Town moves for summary judgment on the grounds that Plaintiff Stuart Cook ("Cook") is unable to prove a Section 1983 claim or a state law negligence claim against Sam's Town. See id. Cook opposed the Motion for Summary Judgment. See Record Document 62. For the reasons which follow, the Motion for Summary Judgment is **GRANTED** and all of Cook's claims against Sam's Town are **DISMISSED**.

**BACKGROUND**[1]

This lawsuit arises from a May 25, 2009 early morning incident that occurred in a Sam's Town Casino hotel room in Shreveport, Louisiana. On May 24, 2009, Cook performed as a member of a band, Creedence Clearwater Revisited, at the Sam's Town Casino in Shreveport, Louisiana.[2] Between 11:00 and 11:30 p.m., Cook joined other band

---

[1] Sam's Town filed a Statement of Uncontested Material Facts. See Record Document 51-2. In response, Cook filed a Concise Statement of Disputed Material Facts. See Record Document 62-1. The Court has incorporated the undisputed facts into the background section of the instant Memorandum Ruling. The disputed facts are noted and citations to the summary judgment record are provided for any such disputed facts.

[2] Cook is an original member of the band Creedence Clearwater Revival and now plays bass for Creedence Clearwater Revisited.

members and members of the band's crew at one of the casino lounges to have drinks. Cook estimates that he stayed at the bar between 45 minutes and one hour. He left the bar alone around midnight or 12:30 a.m.

Relying upon Cook's deposition testimony, Sam's Town contends that Cook did not get back to his hotel room until approximately 3:45 a.m and that at approximately 4:00 a.m., Cook heard a knock on the hotel room door. See Record Document 62, Exhibit 1007 at 95-96. Cook contests these facts, stating that he has no firm or independent recollection of what happened after he left the casino bar. See Record Document 62-1 at ¶¶ 4-6. His first clear memory is of men claiming to be hotel security pounding on his door. See id., Exhibit 1007 at 48. He believes he had been in his room for about 15 or 20 minutes at that time. See id., Exhibit 1007 at 49.

Sam's Town relies on the deposition testimony of Lorenzo Johnson to fill in the gap of time. See Record Document 51-2 at ¶¶ 12-27, citing Exhibit B. Johnson, one of Sam's Town employees on the night of this incident, received a call from the Sam's Town dispatcher shortly before 4:00 a.m. to meet a hotel guest at the valet drop off area and escort him to his room. See Record Document 51, Exhibit B at 15-16, 46-47. When Johnson arrived at the valet drop off area, he met Eldorado Casino security officers who had escorted Cook, sitting in a wheelchair, to Sam's Town because he was intoxicated. See id. Johnson stated that he personally observed that Cook was intoxicated. See id. Johnson pushed Cook in a wheelchair to the hotel front desk because Cook could not provide his room number. See id., Exhibit B at 47. Johnson then escorted Cook to his room, opened the door with a key, and helped Cook out of the wheelchair. See id., Exhibit B at 11, 19, 20-21. It was at this time that Johnson noticed that Cook's room was in

disarray, there was a broken lamp on the floor, and clothes were thrown everywhere. See id., Exhibit B at 20-23. Johnson left Cook's room and reported the condition of the hotel room to Jody Crane ("Crane"), who was the front desk supervisor on duty, and to the security supervisor, Ronnie Walker ("Walker"). See id., Exhibit B at 25-26.

Cook does not dispute that Johnson told Crane that the hotel room was in disarray, there was a broken lamp on the floor, clothes were thrown everywhere, and a chair was turned over. Crane decided to check the room because assessing room damage was his responsibility.[3] Johnson and Crane then returned to Cook's room to check on the damage and to determine if there was any other damage in the room.

Relying upon the testimony of Otis Brewer ("Brewer"), Cook contests many of the facts set forth above relating to his condition and the manner in which he returned to his hotel room. Brewer stated in his deposition that he saw Cook standing on his own volition in the casino bar and that Cook was engaged in a heated confrontation with Walker. See Record Document 62, Exhibit 5009 at 44-49. Brewer recalled that Cook was neither too intoxicated nor in a wheelchair. See id. Brewer further recalled that he, Walker, and Johnson escorted Cook, who was walking on his own, to his room. See id. As the group was still standing in Cook's hotel room doorway, Brewer was called to another incident in the parking garage. See id. Brewer recalled that Cook was visibly upset with the way he was being treated. See id.

---

[3]Sam's Town does not have a policy to deal with a situation where a guest refuses to allow entry into his room. Since a hotel guest had never previously refused entry, Crane notified the casino manager and security supervisor of the situation. Crane spoke to the casino manger, Bennie Ray, who agreed that the room should be checked to see if there was more damage.

After hearing the pounding on his door, Cook looked through the hotel door peephole and saw two men, possibly Johnson and Crane, standing outside who identified themselves as hotel security. Cook refused to allow them to enter. A Sam's Town employee then made a 911 call to the Shreveport Police Department and reported the property damage in Cook's room. See Record Document 64, Exhibit 5019. Shreveport Police Officers Pat Hensley ("Officer Hensley"), Paul Robinson ("Officer Robinson"), and Francis Mogavero ("Officer Mogavero") responded and went to Sam's Town to investigate. Officer Robinson was in charge of the officers on the scene.

Casino Manager Bennie Ray, Walker, and the officers met Crane outside of Cook's room. The officers knocked on Cook's door and requested entry. He again denied their request for entry. A Sam's Town maintenance employee made several unsuccessful attempts to open the door with a pass key and tool. Cook changed his mind a short time later and decided to open the door to allow the police officers into his room. However, before he could release the safety latch, the officers pushed the door open.

There are factual disputes relating to what occurred in Cook's hotel room once there was forced entry. Cook's excessive force claim against the individual police officers and the City of Shreveport will proceed to trial. The officers contend that Cook resisted arrest. Cook contends that he did not. However, it is undisputed that Sam's Town employees did not strike Cook during this incident.

**LAW AND ANALYSIS**

**I.     Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."[4] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

**II.     Section 1983 Claims.**

Cook alleges that Sam's Town employees requested that members of the Shreveport Police Department go with them to his hotel room where they attempted to gain unlawful entry. See Record Document 18 at ¶¶ 6-7. He further alleges that Sam's Town employees acted in concert with the officers to deliberately force their way into his hotel room. See id. Cook is essentially claiming that Sam's Town was a willful participant in joint action with the Shreveport Police Department.

To state a claim for relief under Title 42, United States Code, Section 1983, Cook

---

[4] The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law. See American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S.Ct. 977, 985 (1999). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Id.

The Supreme Court has employed a number of tests for deciding whether a private actor's conduct can be fairly attributable to the State for purposes of Section 1983 liability. See Cornish v. Correctional Services Corp., 402 F.3d 545, 549 (2005). These tests include the public function test, the state compulsion test, the nexus or state action test, and the joint action test. See id. at 549-550. Here, the Court will focus on the nexus or state action test and the joint action test.[5]

Nexus or State Action Test

The nexus or state action test "considers whether the State has inserted itself into a position of interdependence with the private actor, such that it was a joint participant in the enterprise." Id. at 550. Cook argues for the application of the nexus or state action test because of the alleged close relationship between the Shreveport Police Department and Sam's Town. He points to the deposition testimony of Officer Mogavero, which indicates that the officers were somewhat familiar with the security personnel at Sam's Town and other casinos and that calls such as those involving Cook were commonplace. Cook also noted that the three Shreveport Police Department officers involved in this case had worked part-time security for various casinos in downtown Shreveport.

---

[5]Cook conceded that the "public function test" and the "state compulsion test" are inapplicable to this case. See Record Document 62 at 21.

Here, the summary judgment evidence simply does not support a finding that the Shreveport Police Department had "so far insinuated itself into a position of interdependence with [Sam's Town] that it was a joint participant in the enterprise." Richard v. Hoechst Celanese Chemical Group, Inc., 355 F.3d 345, 352 (5th Cir. 2003). Both Officer Mogavero and Officer Robinson stated in their depositions that they had never worked for Sam's Town. See Record Document 51, Exhibit E at 27-28 and Exhibit F at 27.[6] Additionally, the front desk supervisor stated in his deposition that this was the first time a hotel guest had refused entry; thus, there is simply no summary judgment evidence to indicate that calls to the Shreveport Police Department from Sam's Town for incidents such as those involving Cook, i.e., a hotel guest refusing to answer the door, were commonplace. See id., Exhibit C at 45.

Joint Action Test

Under the joint action test, "private actors will be considered state actors where they are willful participants in joint action with the State or its agents." Cornish, 402 F.3d at 550. To maintain a claim that a private citizen is liable under § 1983 on the basis of joint action with state officials, Cook "must allege facts showing an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right, and that the private actor was a willing participant in joint activity with the state or its agents." Polacek v. Kemper County, Miss., 739 F.Supp.2d 948, 952 (S.D.Miss. 2010). It is well settled that private parties do not become state actors merely by calling upon law enforcement for assistance. See Guillot v. Coastal Commerce

---

[6]The summary judgment record does not indicate whether Officer Hensley ever worked for Sam's Town.

Bank, No. 10-2092, 2010 WL 4812959, *3 (E.D.La. Nov. 19, 2010). Likewise, private citizens who give information to law enforcement do not become state actors under Section 1983 when the information is used to effect an arrest, even if the citizen knew that the information was false. See Guillot, 2010 WL 4812959, *3.

Sam's Town has moved for summary judgment on Cook's Section 1983 claim, arguing that the undisputed facts establish that its employees did not conspire with the Shreveport police officers to deprive Cook of his constitutional rights. Sam's Town called the Shreveport Police Department for assistance in gaining access to Cook's room. See Record Document 51, Exhibit F at 11-12, 14. Upon arrival, the officers conducted their own investigation. See id. Officer Robinson initially decided that the officers would not enter Cook's room. See Record Document 51, Exhibit F at 11-12, 14. However, he later decided to enter the room based on what he perceived to be an emergency/welfare situation. See id., Exhibit F at 11, 14-15. The decision to enter Cook's room was made exclusively by the officers. See id., Exhibit E at 59-61, 65 and Exhibit F at 20-21, 39-43.

Conversely, Cook argues that the evidence establishes that Sam's Town did much more than merely furnish information to the Shreveport Police Department. See Record Document 62 at 23. He argues that a jury could find that:

> the incident report was fabricated to "cover up" Walker and Johnson's conduct; that the police were deliberately lied to by Sam's Town employees to induce them to make an illegal entry and arrest; that evidence which would have proven what actually happened was destroyed; and, many other reasonable inferences from the circumstances, all of which could be adverse to Sam's Town.

Id. Cook contends that "material issues remain as to whether Sam's Town provided false or exaggerated information to the [Shreveport Police Department] as a means of gaining

entry into Cook's room, and violating his constitutional rights." Id. at 24. Finally, relying upon Morris v. Dillard Dep't Stores, Inc., 277 F.3d 743 (5th Cir. 2001), Cook argues that there are material issues of fact "as to whether the [Shreveport Police Department] officers did conduct an investigation sufficient to protect Sam's Town from liability under Sec. 1983." Id. at 25.[7]

Cook's arguments to prevent summary judgment are unconvincing. As noted previously, private actors who give information to law enforcement do not become state actors under Section 1983 when the information is used to effect an arrest, *even if the citizen knew that the information was false*. See Guillot, 2010 WL 4812959, *3. Thus, Cook's argument that Sam's Town gave false or exaggerated information to the officers is of no matter. Additionally, there is simply no competent summary judgment evidence to support a finding that the Shreveport Police Department, more particularly the three officers involved in the incident in question, and Sam's Town had any discussion or agreement to deprive Cook of his constitutional rights.

Conversely, there is competent summary judgment evidence demonstrating that the three officers, namely Officer Robinson, conducted an independent investigation. In Morris,

---

[7]Cook argues that Brewer's testimony creates fact issues. However, even if Brewer's testimony is considered true, it is not material to the resolution of Cook's Section 1983 claims against Sam's Town.

In its Section 1983 analysis, the Court must determine whether Sam's Town and the Shreveport Police Department conspired to deprive Cook of his constitutional rights. As set forth *infra*, the critical issue in this analysis is whether the officer conducted an independent investigation. The Court has found that the officers' deposition testimony, namely that of Officer Robinson, establishes that the officers performed an independent investigation while standing at Cook's hotel room door. Thus, Brewer's testimony is immaterial because he has admitted that he was not present when the officers arrived at Cook's hotel room door and later made the decision to enter Cook's hotel room.

the Fifth Circuit held that a merchant will not be subject to Section 1983 liability "unless an officer has failed to perform independent investigation, and that evidence of a proper investigation may include such indicators as an officer's interview of an employee, independent observation of a suspect, and the officer writing his own report." Morris, 277 F.3d at 750. Here, in his deposition, Officer Robinson stated:

> Originally, he told me that he needed SPD to go into the room. I told him no. Under an abundance of caution I didn't see any reason at that point that we were going in the room.
>
> . . .
>
> I explained . . . that all I have heard so far is hollering and screaming which is consistent with an intoxicated person. I said I mean, he's intoxicated, he's in his room, I haven't heard nothing else. During this time you start hearing things being thrown around in the room, you start hearing a male saying things about Nazis, communism, just crazy things inside the room. So that's when I looked at Officer Mogavero and I said this might be more than an intoxicated person. I said we can't legally leave him here by himself screaming and hollering. We don't know if he's got a rifle, we don't know if he's got a gun. I mean, any reasonable person that starts hearing somebody screaming like that and starts talking about Nazis and communism, I said there's just no way, we are going to have to do a welfare concern at least and check on him. So that is when I asked Officer Mogavero to basically put his shoulder in the door and force entry whenever they unlocked the latch to prevent him from slamming it back.

Record Document 51, Exhibit F at 12, 15. Thus, the decision to enter the room was based on Officer Robinson's independent investigation, namely his observation of a situation involving an intoxicated person that escalated into an emergency/welfare concern.

There is no evidence that Sam's Town employees and the officers had a meeting of the minds to violate Cook's constitutional rights. Instead, this appears to be a situation where Sam's Town employees merely called the Shreveport Police Department for assistance in gaining access into Cook's room. In such cases, Sam's Town is not liable

under Section 1983.[8] Summary judgment in favor of Sam's Town is, therefore, granted, as Sam's Town was not acting under color of state law at the time of the incident in question.

### III. State Law Negligence Claims.

Cook alleges claims against Sam's Town under Louisiana Civil Code Article 2315:

> Sam's Town Casino is also liable to plaintiff for . . . damages as a result of its employees, agents or officers setting in motion and participating in the chain of events that culminated in plaintiff's injuries and damage to reputation.

Record Document 18 at ¶ 13. It appears that Cook is alleging that Sam's Town was negligent in attempting to enter his room to investigate the damage to hotel property, and in requesting assistance from the Shreveport Police Department when he refused entry.

In Pitre v. Louisiana Tech University, 673 So.2d 585 (La. 1996), the Louisiana Supreme Court explained the duty-risk analysis to determine liability under Article 2315. The duty-risk analysis examines "the conduct of each individual party and the peculiar circumstances of each case." Id. at 589. "The relevant inquiries are:

  (1)  Was the conduct of which the plaintiff complains a cause-in-fact of the

---

[8]In Young v. Harrison, 284 F.3d 863 (8th Cir. 2002), the court explained:

> Young has not presented any evidence that [security guard] Adcock and the police had a meeting of the minds with regard to violating Young's constitutional rights. There is not sufficient evidence that would enable a rational factfinder to conclude that the officers' conduct at the hotel resulted from concerted action "tantamount to substituting the judgment of a private party for that of the police or allowing the private party to exercise state power." The only facts on which Young relies consist of Adcock calling the police and bringing the officers to the suite. This is not enough to bring Adcock and the hotel he worked for under the purview of section 1983.

Young, 284 F.3d 870.

>   resulting harm?
>
> (2) What, if any, duties were owed by the respective parties?
>
> (3) Whether the requisite duties were breached?
>
> (4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?[9]
>
> (5) Were actual damages sustained?

Id. at 589-590. "If the plaintiff fails to satisfy one of the elements of duty-risk, the defendant is not liable." Id. at 590. Here, Sam's Town is not liable because Cook has failed to satisfy the fourth inquiry, that is, legal causation.

In Kennedy v. Sheriff of East Baton Rouge, 2005-1418 (La. 7/10/06), 935 So.2d 669, the Louisiana Supreme Court discussed legal causation in the context of a malicious prosecution claim:

> [I]t is clear that any chain of causation regarding plaintiff's subsequent detention was broken. The decision to detain plaintiff was made by the independent actions and investigation of the Sheriff's Office. Therefore, . . . plaintiff cannot establish that he will be able to provide factual support sufficient to satisfy his burden of proving legal causation, an essential element of a malicious prosecution action.

Kennedy, 935 So.2d 669, 690 n. 20. In Adams v. Harrah's Bossier City Investment Company, LLC, 41,468 (La.App. 2 Cir. 1/10/07), 948 So.2d 317, Harrah's suspected that the plaintiff had stolen a $500 chip from another patron and called the police to investigate. See id. at 318. The plaintiff was arrested and charged with felony theft. See id. The district attorney's office ultimately dismissed the charge and the plaintiff sued Harrah's for

---

[9]Stated another way, this inquiry focuses on whether the party's substandard conduct was a legal cause of the injuries at issue. See Toston v. Pardon, 2003-1747 (La. 4/23/04), 874 So.2d 791, 801.

damages allegedly arising out of the arrest. See id. Relying upon Kennedy, the Adams court reasoned:

> In the case sub judice, the Shreveport police conducted a similar independent investigation into the suspected theft. After the three police officers arrived, two of them viewed the video recording and arrived at a decision to arrest Mr. Adams independent of Harrah's. Plaintiffs argue that Harrah's possible involvement in commenting on the video distinguishes this case from Kennedy. In particular, Plaintiffs point out that the usual procedure, as described by one of the investigating police officers, is for Harrah's security to review the video tape with the police and point out what they believed was the criminal act. The officer was unable to recall if, in this particular instance, Harrah's security had such involvement. ***Even if they did, this involvement does not rise to such a level as to prevent the police investigation from being independent of Harrah's own suspicions. As such, the independent investigation by the police breaks any legal causation.***
> Plaintiffs further argue that Kennedy is distinguishable because, unlike the employees in Kennedy, Harrah's security force is composed of highly trained personnel amounting to a private police force. We find this distinction unpersuasive. The reasoning of the Kennedy court is not based on the qualifications of who made the complaint, but, instead, on ***subsequent and intervening law enforcement investigation***. The police in the instant case made an independent investigation just as the Sheriff's Office did in Kennedy. This is the critical factor that prevents Plaintiffs from proving legal causation on any of their claims.

Id. at 320 (emphasis added).

Here, this Court held in the context of the joint action test that the three officers, namely Officer Robinson, conducted an independent investigation. The officers spoke to Sam's Town employees and gathered information. More importantly, they personally observed what originally appeared to be a case involving an intoxicated person in his hotel room escalate into an emergency/welfare concern. The officers independently made their decision to enter the hotel room and to arrest Cook; thus, Sam's Town was not the legal cause of Cook's alleged injuries caused by the officers' entry into his hotel room and his

arrest. Summary judgment in favor of Sam's Town is, therefore, granted and Cook's state law negligence claims are dismissed.

## CONCLUSION

Based on the foregoing analysis, the Motion for Summary Judgment (Record Document 51) filed by Sam's Town is **GRANTED**. The Court finds that Sam's Town is not a private actors whose conduct can be fairly attributable to the City of Shreveport for purposes of Section 1983 liability. The Court further finds that Cook's state law negligence claims fail on the ground of legal causation. Accordingly, all of Cook's claims against Sam's Town are **DISMISSED**.[10]

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 19th day of August, 2011.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

[10]Sam's Town has also filed a Motion in Limine (Record Document 67) seeking to exclude certain trial exhibits. In light of the instant ruling, which dismisses all claims against Sam's Town, the Motion in Limine (Record Document 67) is **DENIED AS MOOT**.